UNITED STATES of America

v.

Federico GIOVANELLI, a/k/a "Fritzy," Steven Maltese and Carmine Gualtiere, a/k/a "Buddy," Defendants.

No. S 88 Cr. 954 (CBM).

United States District Court, S.D. New York.

April 26, 1989.

Supplemental Opinion May 1, 1989.

Benito Romano, U.S. Atty., S.D.N.Y. by Adam S. Hoffinger, J. Gilmore Childers, Asst. U.S. Attys., New York City, for U.S.

Lawrence Hochheiser, Hochheiser & Aronson by Vivian Shevitz, Georgia J. Hinde, New York City, for defendant Federico Giovanelli.

Ira S. Cooper, Zerin & Cooper by Neil Rothfeld, New York City, for defendant Steven Maltese.

Robert M. Baum, The Legal Aid Soc., Federal Defenders Services Unit by Roland Thau, Robert E. Precht, New York City, for defendant Carmine Gualtiere.

## OPINION

MOTLEY, District Judge.

In an indictment filed on December 20, 1988, and a superseding indictment filed on February 27, 1989, the Government charges defendants Federico Giovanelli, Steven Maltese and Carmine Gualtiere with conspiring to violate (Count I) and substantive violation (Count II) of the Racketeer Influenced and Corrupt Organizations statute ("RICO") through a pattern of racketeering activity and collection of unlawful debt. 18 U.S.C. §§ 1962(c), (d). The RICO counts of the superseding indictment allege six predicate acts of racketeering including the murder of police Detective Anthony Venditti, the attempted murder of his partner, Detective Kathleen Burke, the murder of Charles Bentivegna, a loansharking conspiracy, conduct of an illegal gambling enterprise and travel in aid of the racketeering enterprise. In charging that defendants also participated in the conduct of the enterprise's affairs through the collection of unlawful debts, the superseding indictment enumerates three such collections.[1]

In addition to the RICO and RICO conspiracy counts, the superseding indictment charges defendants with the conduct of an illegal gambling business in violation of 18 U.S.C. § 1955 (Count III), conspiracy to make extortionate extensions of credit in violation of 18 U.S.C. §§ 891 and 892 (Count IV), transmission of wagering information in violation of 18 U.S.C. § 1084 (Count V), travel in aid of the racketeering enterprise in violation of 18 U.S.C. § 1952 (Count VI) and conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count VII). Not all defendants are named in each substantive count and racketeering act.

This opinion sets out the court's decisions on the various pretrial motions made by defendants Giovanelli, Maltese and Gualtiere. Each motion will be addressed in turn and the defendant bringing that particular motion will be indicated. The court notes that each defendant has joined in the motions of the others to the extent applicable to him.

*Discussion*

Motion to Dismiss Indictment for Alleging an Improper Time Frame as to the RICO Conspiracy Charge (Giovanelli)

Count I of the superseding indictment alleges that the defendants conspired to violate 18 U.S.C. § 1962(c) ("RICO") "[f]rom in or about January, 1970 up to and including the date of the filing of this Indictment." Since the RICO law did not become effective until later in that year—on October 15, 1970—Giovanelli moves to dismiss Count I as charging a conspiracy to violate a law which did not exist at the start of the alleged conspiracy.

Language in an indictment charging that crimes were committed "on or about" a certain date is taken only as an approximation and is not to be strictly construed. *See United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir.1987), *cert. denied*, 484

---

1. Defendants have already been tried twice in New York state court on charges stemming from the Burke/Venditti shootings. The result of those trials forms the basis of defendants' motion to dismiss racketeering acts three and four—alleging defendants' participation in the Burke/Venditti shootings—on grounds of double jeopardy. That motion is dealt with in a separate opinion.

U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987). Since the precise starting date of the alleged RICO conspiracy "is not an essential element of the offense charged," *Id.*, defendant's motion to dismiss Count I of the indictment is denied.

### Motion to Dismiss Count VI as Outside the Statute of Limitations (Giovanelli)

■ Giovanelli moves to dismiss Count VI of the superseding indictment—alleging travel in aid of the racketeering enterprise in violation of 18 U.S.C. § 1952 (the "Travel Act")—because it violates the statute of limitations for that offense. Defendant points out that Count VI charges misconduct from May, 1982, through January 21, 1986 (the day of the Burke/Venditti shootings), while the parallel Travel Act predicate—racketeering act five—charges misconduct only from May, 1982, through November, 1982. While defendant concedes that the statue of limitations is no bar to proving a RICO predicate, he suggests that the Government improperly expanded the time period in Count VI to ensure that the misconduct alleged occurred within the applicable statute of limitations for a substantive violation of the Travel Act. *See* 18 U.S.C. § 3282 (Travel Act has a five year statute of limitations).

Since the indictment was handed down on December 20, 1988, any substantive violation of the Travel Act must have occurred within the previous five years in order to satisfy the statute of limitations for that offense. *Id.* Thus, while defendant's motion may have some merit, it is premature. To avoid dismissal of Count VI at the close of its direct case, the Government must elicit sufficient evidence to support a conclusion that the alleged substantive violation of the Travel Act conforms to the time frame set out in the indictment. If it fails to do so, or only proves misconduct within the time frame alleged in the parallel racketeering act, Count VI will be dismissed. Defendant's motion is therefore denied without prejudice and with leave to renew at the close of the Government's case.

### Motion to Conduct a Pretrial Hearing to Control the Use of Alleged Co–Conspirator Statements (Giovanelli)

■ Defendant moves for a hearing to establish, *in limine*, the existence of a conspiracy and its membership before alleged co-conspirator statements can be admitted at trial against all defendants pursuant to Fed.R.Evid. 801(d)(2)(E).

Commonly referred to as a *"James* hearing" after a Fifth Circuit case establishing the practice, *United States v. James*, 576 F.2d 1121, 1127–32 (5th Cir.1978), *modified en banc*, 590 F.2d 575 (5th Cir.1979), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), this type of pretrial hearing is neither required nor generally convened in this Circuit. Instead, the functional equivalent of a *James* hearing is provided by a court's determination—at the close of the Government's case—that a preponderance of the evidence demonstrates "that there was a conspiracy, that both the declarant and the party against whom the statements are offered were members of the conspiracy, and that the statements were made in furtherance of the conspiracy." *United States v. Daly*, 842 F.2d 1380, 1386 (2d Cir.1988), *cert. denied*, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *see United States v. Geaney*, 417 F.2d 1116 (2d Cir.1969), *cert. denied*, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970); *see also United States v. Margiotta*, 688 F.2d 108, 136–7 (2d Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *United States v. Mastropieri*, 685 F.2d 776, 786–90 (2d Cir.1982), *cert. denied*, 459 U.S. 945, 103 S.Ct. 260, 74 L.Ed.2d 203 (1982). Moreover, "[i]n making these preliminary factual determinations, the court may take into account the proffered out-of-court statements themselves if those statements are sufficiently reliable in light of independent corroborating evidence." *Daly, supra* (citing *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 2781–82, 97 L.Ed.2d 144 (1987). Called a *"Geaney"* ruling, the procedure described above for admitting co-conspirator statements at trial is the norm in this Circuit and we see no reason to depart from it in the instant case.

Consequently, as is the practice in this Circuit, defendants' hearsay statements will be admitted in the Government's case "subject to connection" and without the need for a pretrial hearing on the sufficiency of the evidence concerning each defendant's participation in the alleged conspiracy. *United States v. Stanchich*, 550 F.2d 1294, 1298 (2d Cir.1977); *see also United States v. Mastropieri*, 685 F.2d at 788; *United States v. Geaney*, 417 F.2d at 1120. This court will, of course, make the required *Geaney* ruling at the close of the Government's case. The motion for a pretrial hearing to control the use of alleged co-conspirator statements is denied.

Motion to Dismiss Multiplicitous Charges (Giovanelli/Gualtiere)

Defendants argue that effectively multiplicitous charges in the superseding indictment should be dismissed. Giovanelli claims that most of the charges in the superseding indictment are all variations on a theme of gambling, while Gualtiere objects to the fragmentation of the gambling activity into multiple acts of collecting unlawful debt. Defendants' argue that the Government has impermissibly split unitary criminal conduct into multiple acts in a contrived effort to use the RICO statute against them.

The long standing test for multiplicity of charges in an indictment was set down by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Under *Blockburger*, two charges are not multiplicitous if each requires "proof of an additional fact which the other does not." *Id.* Using this test, as Giovanelli himself admits, *see* Memorandum of Law of Defendant Giovanelli in Support of Omnibus Motion for Pretrial Relief at 79–80 ("Giovanelli Memorandum"), it is clear that none of the counts in the superseding indictment are multiplicitous.

Defendants' reliance on the recent Second Circuit decision in *United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) is misplaced. As the *en banc* court in *Indelicato* wrote:

... though we would disapprove of any attempt by the [G]overnment or a private plaintiff to go beyond Congress's intent and fragment an act that is plainly unitary into multiple acts in order to invoke RICO, *we conclude that where in fact there are a number of different acts, each should be counted seperately.* If there are similarities between them with respect to victim, methodology, goal, etc., and if there is evidence of a threat of continuation of racketeering activity, we conclude that the acts may constitute a pattern even though they are nearly simultaneous.

*Id.* at 1383 (emphasis added).

If, as the *Indelicato* court held, the virtually simultaneous murder of three men, by the same assailants, at the same time, and in the same place, constitute three separate acts for purposes of the RICO statute, then none of the criminal conduct charged in the instant case can be considered multiplicitous. Accordingly, defendants' motion to dismiss multiplicitous counts in the superseding indictment is denied.

Motion to Dismiss Superseding Indictment For Investigative and Prosecutorial Misconduct

■ Giovanelli moves to dismiss the superseding indictment because of the "shocking" pattern of "investigative and prosecutorial misconduct" surrounding the instant case. Giovanelli Memorandum at 112. The Government responds that defendant's allegations are "frivolous." Government's Memorandum of Law in Opposition to Defendants' Pretrial Motions at 92 ("Government's Memorandum").

At best, Giovanelli's claims of investigative misconduct simply repeat, in more vitriolic tones, his legal challenges to evidence obtained from wiretaps on his phone and searches of his home and safe deposit boxes. As for defendant's allegations of prosecutorial misconduct, they are directed at the conduct of prosecutors in the two prior state court trials—at which defendants were tried for the Burke/Venditti shootings—and have nothing whatsoever to do with the federal RICO case currently before this court. Thus, given the state of

the record before us, we find defendant's claims of investigative and prosecutorial misconduct to be unsupported by any concrete proof. Moreover, "[t]he mere allegation of government misconduct [is] wholly insufficient to require the District Court to hold an evidentiary hearing." *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982). Accordingly, defendant's motion to dismiss the superseding indictment for investigative and prosecutorial misconduct is denied.

Motion for a Hearing to Determine the Relatedness Among the Racketeering Acts Charged and between those Acts and the Alleged Enterprise (Giovanelli)

■ Claiming that there is no evidence to support the relatedness of the racketeering acts charged in the superseding indictment and the relationship of those acts to the alleged enterprise, defendant argues that the Government should be required to prove its theory of relatedness prior to the start of trial. The Government responds that defendant's motion amounts to nothing more than a "thinly veiled attempt at previewing the Government's case." Government's Memorandum at 16.

As the Second Circuit makes clear in *Indelicato, supra,* no person may be convicted of participating in the affairs of an enterprise "through a pattern of racketeering activity," 18 U.S.C. § 1962(c), unless the Government proves that the racketeering acts form a pattern *and* demonstrates the requisite relationship of those acts to the alleged enterprise. 865 F.2d at 1383–84. In clarifying what must be proved to establish such a RICO offense and the nature of that proof, it is instructive to quote at some length from the decision of the *en banc* court in *Indelicato*:

> An interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways. These include proof of their temporal proximity, or common goals, or similarity of methods, or repetitions.

... While temporal separation of events is a common feature of a pattern of action, it is not an essential; such a pattern may be found, for example, in the simultaneous commission of like acts for similar purposes against a number of victims.

... If there are similarities between [the racketeering acts] with respect to victim, methodology, goal, etc., and if there is evidence of a threat of continuation of racketeering activity, ... the acts may constitute a pattern even though they are nearly simultaneous.

... In some cases both the relatedness and the continuity necessary to show a RICO pattern may be proven through the nature of the RICO enterprise. For example, two racketeering acts that are not directly related to each other may nevertheless be related indirectly because each is related to the RICO enterprise. The nature of the enterprise may also serve to show the threat of continuing activity. Where the enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business automatically carries with it the threat of continued racketeering activity ... We do not suggest that a defendant's association with an organized crime group is itself an act of racketeering activity, or that the defendant is to be held accountable for the racketeering acts of others. We simply note that such an association may reveal the threat of continued racketeering activity and thereby help to establish that the defendant's own acts constitute a pattern within the meaning of RICO.

Finally, we note that though the interrelatedness concept discussed above pertains to the predicate acts, it is plain that for the establishment of a RICO violation there must also be some kind of relationship between the acts and the enterprise, for each of the substantive RICO subsections prohibits a specific type of interplay between a pattern of racketeering activity and the enterprise [2]

2. In this case, defendants are charged under 18 U.S.C. § 1962(c). This section of the RICO law prohibits an individual from participating in the affairs of an enterprise, either directly or indi-

... Thus, no RICO violation can be shown unless there is proof of the specified relationship between the racketeering acts and the RICO enterprise. To the extent, therefore, that the relationship between acts necessary to establish a pattern depends on the relationships between individual acts and the enterprise, there will often be some overlap of proof and analysis.

*Id.* at 1382–84.

While *Indelicato* clarifies what the Government must prove at trial in order to establish a RICO violation and the nature of that proof, it does not require the Government to demonstrate its evidence of any or all of the elements of a RICO case at the type of pretrial hearing defendant seeks in this motion. Since such a hearing is essentially a request for a preview of the Government's case, we decline to conduct one. The rule is well-established in this Circuit that the prosecution is not required to inform defendants in advance of the evidence it will present in support of its case at trial. *United States v. Lebron*, 222 F.2d 531, 535–36 (2d Cir.1955), *cert. denied*, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955).

If the Government fails to establish, at trial, any of the necessary elements of a RICO offense as to each of the defendants, this court will grant defendants' timely motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29. Accordingly, defendant's request for a pretrial hearing to determine the relatedness of the racketeering acts charged in the superseding indictment and the relationship of those acts to the alleged enterprise is denied. This ruling also applies to defendant Gualtiere's motion to dismiss the indictment for "mis-joinder of predicate acts," Memorandum of Law of Defendant Gualtiere in Support of Omnibus Motion for Pretrial Relief at 15 ("Gualtiere Memorandum"), since the argument in support of that motion merely restates Giovanelli's argument for a pretrial hearing on the Government's theory of relatedness in the instant case.

Request for Production of Grand Jury Minutes (Gualtiere)

Defendant Gualtiere moves for disclosure of grand jury minutes pursuant to Fed.R.Crim.P. 6(e)(3)(C)(ii) so that he may determine whether the Government presented to that body certain allegedly exculpatory evidence related to the Burke/Venditti shootings.[3] Defendant argues that if the Government failed to present that evidence, grounds would exist to dismiss the indictment for prosecutorial misconduct.

It is well settled that disclosure of grand jury minutes is required only when the requesting party can demonstrate a "particularized need" for such disclosure. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 221, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979); *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 32–33 (2d Cir.1981), *cert. denied*, 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983). Moreover, "in order to justify dismissing an indictment for prosecutorial misconduct, the prosecutor must have knowingly withheld 'substantial evidence negating guilt ... where it might reasonably be expected to lead the jury not to indict.' *United States v. Ciambrone*, 601 F.2d 616, 623 (2d Cir.1979). A dismissal is warranted only in extreme circumstances, when it is necessary to eliminate prejudice to the defendants, or to ensure that the

---

rectly, through a pattern of racketeering activity. *Id.* Under 1962(c), "[t]he requirement of connection to a RICO enterprise is satisfied if the evidence is sufficient to establish either that the defendant 'is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise,' or that 'the predicate offenses are related to the activities of the enterprise.' *United States v. Scotto*, 641 F.2d 47, 54 (2d Cir.1980), *cert. denied*, 452 U.S. 961 [101 S.Ct. 3109, 69 L.Ed.2d 971] (1981); *see United*

States v. Robilotto*, 828 F.2d 940, 947–48 (2d Cir.1987) (citing cases), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 662 (1988)." *United States of America v. Salerno et. al.*, 868 F.2d 524, 533 (2d Cir.1989).

3. Fed.R.Crim.P. 6(e)(3)(C)(ii) states that a court may order disclosure of grand jury minutes "at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

government attorney acts in accordance with the law. *United States v. Brown*, 602 F.2d 1073, 1077 (2d Cir.1979), *cert. denied*, 444 U.S. 952 [100 S.Ct. 427, 62 L.Ed.2d 323] (1979)." *United States v. Romano*, 706 F.2d 370, 374 (2d Cir.1983). As this court recently stated in *United States v. Biaggi et. al.*, 675 F.Supp. 790 (S.D.N.Y.1987), "requests for inspection of grand jury minutes should be granted 'sparingly in extreme cases only when the defendant advances facts, upon a sworn affidavit or sworn testimony, which clearly reflects a prejudicial irregularity in the grand jury proceedings.'" *Id.* at 805 (quoting *United States v. Aman*, 13 F.R.D. 430, 431 (N.D.Ill.1953).

■■ Defendant seeks disclosure of the grand jury minutes so that he may determine whether the Government presented allegedly exculpatory evidence to that body. Specifically, Gualtiere claims that the Government may have failed to present evidence that Detective Burke did not immediately identify Gualtiere by name as one of her three assailants during her first interviews with police detectives while she was in the hospital following the shootings. Gualtiere Memorandum at 28. However, in subsequent interviews conducted at the hospital, Burke gave the names of all three defendants in this case as participating in the attack against her and Detective Venditti and testified to this effect at the state court trials (in addition to Burke's testimony, other witnesses at the state court trials identified Gualtiere as one of the assailants in the shootings). While Gualtiere correctly notes that Burke's failure to immediately identify him by name to police detectives was used to impeach her testimony at the state murder trials, Gualtiere Memorandum at 28, such impeachment material does not rise to the level of "substantial evidence negating guilt" which the Government would have been obliged to present to the grand jury. *Ciambrone, supra*, 601 F.2d at 623. Thus, even if the Government failed to inform the grand jury that Burke initially did not mention Gualtiere by name as one of her assailants, such an omission would "fall far short of misleading conduct or deception that would call for dismissal of the indictment in the present case." *Id.*

Since dismissal of an indictment is a "drastic remedy" reserved for only the most "extreme circumstances" of prosecutorial misconduct or prejudice to a defendant, *Romano, supra*, 706 F.2d at 374; accord *United States v. Dyman*, 739 F.2d 762, 768 (2d Cir.1984), *cert. denied*, 469 U.S. 1193, 105 S.Ct. 969, 83 L.Ed.2d 973 (1985), Gualtiere's suspicions, even if they were correct, would not warrant this court's dismissal of the indictment. And since no dismissal of the indictment would be warranted, Gualtiere cannot claim to have demonstrated the particularized need required to mandate disclosure of the grand jury minutes in this case.

■ As the Second Circuit has said, since presentation of a case to a grand jury is not an adversarial proceeding at which the guilt or innocence of the accused is adjudicated, the government is not required to highlight every piece of potentially exculpatory evidence or evidence that would undermine the credibility of Government witnesses, as long as the prosecutor does not dupe the grand jury or engage in unfair tactics before it. *Ciambrone, supra*, 601 F.2d at 622–23, *accord, Romano, supra*, 706 F.2d at 374. As the fact which Gualtiere claims the Government may have failed to present to the grand jury is, at best, impeachment material going to the credibility of Detective Burke and not substantial evidence negating Gualtiere's alleged guilt, defendant cannot claim to have demonstrated, as he must, a particularized need for disclosure of the grand jury minutes. Moreover, defendant has alleged no other instances of prosecutorial misconduct or procedural irregularities with regard to any grand jury proceedings which might lend support to his disclosure request. Reviewing Gualtiere's claim, we cannot say, as would be necessary, that his interest in "a just result in a judicial proceeding" outweighs "the countervailing policy of grand jury secrecy." *United States v. Sobotka*, 623 F.2d 764, 767 (2d Cir.1980) (when ordering disclosure of grand jury minutes court must balance need to maintain grand jury secrecy against defendant's interest in disclosure of grand jury minutes). Accordingly,

defendants request for production of the grand jury minutes is denied.

### Motion to Dismiss Counts I, II and VII for Improper Venue (Giovanelli)

Giovanelli moves to dismiss Count I (RICO conspiracy), Count II (RICO) and Count VII (conspiracy to defraud the United States) of the superseding indictment alleging that the venue for these charges is not properly laid in the Southern District of New York.

 Under 18 U.S.C. § 3237(a) (West 1985) "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued or completed." *See United States v. Ramirez–Amaya,* 812 F.2d 813, 816 (2d Cir.1987); *United States v. Gilboe,* 684 F.2d 235, 239 (2d Cir.1982), *cert. denied,* 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983). "As to a charge of conspiracy, venue may properly be laid in the district in which the conspiratorial agreement was formed or in any district in which an overt act in furtherance of the conspiracy was committed by any of the co-conspirators." *Ramirez–Amaya, supra,* 812 F.2d at 816. It is well established in this Circuit that venue in a criminal case is a fact that must be proved by the Government at trial. *United States v. Potamitis,* 739 F.2d 784, 791 (2d Cir.1984), *cert. denied,* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984). To prove venue, however, the prosecution need only show by a "preponderance of the evidence" that any part of the crime was committed within the district in which the charges are brought. *Id.* (citing *United States v. Panebianco,* 543 F.2d 447, 455 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1128, 1129, 51 L.Ed.2d 553 (1977) (venue turns on whether any part of the crime was committed within the district and need only be proved by a preponderance of the evidence)).

 Counts I and II allege that defendants conspired to participate in and did participate in a RICO enterprise through an illegal gambling business operating in the Southern District of New York and elsewhere. Since these Counts allege continuing offenses within the meaning of 18 U.S.C. § 3237(a), *see Potamitis, supra,* 739 F.2d at 791 (offense is a continuous one under 18 U.S.C. § 3237(a) if it is begun in one district and completed in another or is committed in more than one district), venue would be proper as to each defendant in any district in which the criminal conduct began, continued or concluded. *See* 18 U.S.C. § 3237(a). Consequently, venue is properly laid in the Southern District of New York, the district where, among other places, the illegal gambling business is alleged to have operated.

 As to Count VII, it charges that defendants conspired to defraud the United States by failing to declare as taxable income the proceeds allegedly garnered from their illegal gambling business. Since a conspiracy is charged, venue may properly be laid in the district in which the conspiratorial agreement was formed or in any district in which an overt act in furtherance of the conspiracy was committed by any of the co-conspirators. *Ramirez–Amaya, supra,* 812 F.2d at 816. Since the indictment alleges that one or all of the overt acts in furtherance of the conspiracy were committed in the Southern District of New York, venue is properly laid in this District as to Count VII.

Defendant's motion to dismiss Counts I, II and VII for improper venue is denied without prejudice and with leave to renew at trial since, as we have noted, venue is a fact that must be proved by the Government through a preponderance of the evidence in every criminal case. *Potamitis,* 739 F.2d at 791.

### Motion for a Wade/Gilbert Hearing (Gualtiere)

 Gualtiere moves for a hearing to determine the admissibility in court of any identifications of him made by prosecution witnesses at police line-up or show-ups conducted after the Burke/Venditti shootings. *See United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct.

1951, 18 L.Ed.2d 1178 (1967). The Government suggests that such hearings are unecessary as *Wade/Gilbert* hearings were already conducted at the two prior state court trials and the Government only intends to call as eyewitnesses those persons who previously testified in the state court proceedings.

Specifically, Gualtiere alleges that the line-up identification of him by Frank Simone, a prosecution witness in the state court trials, was improperly influenced by the police. As to any other eyewitnesses the Government may call at trial, Gualtiere has not alleged any concrete grounds to suggest that any police identification procedures used in connection with these witnesses were improper, unfair or unduly suggestive. Accordingly, as to Frank Simone, a *Wade/Gilbert* hearing is granted. As to any other eyewitnesses the Government may call at trial, the request for a *Wade/Gilbert* hearing is denied.

Motion to Suppress Evidence Obtained from Search of Giovanelli Residence (Giovanelli)

██ Giovanelli moves to suppress evidence obtained from a search of his home pursuant to a warrant issued on November 25, 1986, by the Honorable Allyne Ross, United States Magistrate for the Eastern District of New York. Among other arguments directed to the validity of that warrant, Giovanelli claims the search was conducted after the warrant had expired. The Government disputes defendant's claim and states that the search was conducted within the expiration time specified in the warrant.

In response to the Government's answer, Giovanelli requests a hearing so that the court may determine the date on which the warrant actually expired. As to that issue, the motion for a hearing is granted.

Motion to Suppress Evidence Seized from Safe Deposit Boxes (Giovanelli)

Giovanelli moves to suppress the evidence seized on December 5, 1976, and December 9, 1976, from three safe deposit boxes—Nos. 560, 561 and 701—located at the Cross County Federal Savings and Loan Association, Middle Village, New York. The court grants the Government's request for a hearing on the validity of the searches of boxes 560 and 561, and the defendant's request for a hearing as to the validity of the search of box 701.

*Conclusion*

As to the motions disposed of by this opinion, the court believes that oral argument will not be necessary and declines to have such argument. As to defendants' remaining motions, they will be the subject of separate opinions to be filed shortly. The court will inform the parties as to whether any oral argument or further hearings will take place on the remaining motions. In place of the oral argument on the motions scheduled for May 1, 1989, the court will begin the *Wade/Gilbert* hearing requested by defendant Gualtiere and the hearings on the expiration date of the November 25, 1986, search warrant and the validity of the searches of the three safe deposit boxes.

An order will accompany this opinion.

## SUPPLEMENTAL OPINION

This opinion sets out the court's reasons for its denial of the remainder of defendants' motions pursuant to an order filed April 28, 1989.

*Motion to Suppress Maltese/Garcia Tapes (Maltese)—Motion to Exclude Tapes as Evidence Against Co-Defendants (Giovanelli/Gualtiere)*

██ On May 8 and 18, 1987, under the supervision of the Federal Bureau of Investigation, a confidential government informant named Felipe Garcia recorded conversations he had with defendant Steven Maltese at the Bronx House of Detention (the "Garcia tapes"). At the time, Maltese was on trial in New York state court for the murder of Detective Anthony Venditti and the attempted murder of Detective Kathleen Burke. Maltese moves to suppress the tapes as evidence in the instant case alleging that they were obtained in violation of his Sixth Amendment right to counsel. *See Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246

(1964); *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986).

While incriminating statements made on the Garcia tapes may or may not have been admissible against Maltese at the state court trial, "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Maine v. Moulton*, 474 U.S. 159, 180 n. 16, 106 S.Ct. 477, 489 n. 16, 88 L.Ed.2d 481 (1985); *accord Moran v. Burbine*, 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986) (evidence concerning a crime for which defendant had not been indicted would be admissible at a trial limited to those charges even if it was obtained in violation of defendant's Sixth Amendment right to counsel in a prior case); *see also United States v. Hinton*, 543 F.2d 1002, 1015 (2d Cir.1976). The Government has stated that the only portions of the Garcia tapes they will seek to offer at trial relate to the organized crime activity and gambling offenses which are part of the RICO offenses alleged in this case and which have nothing to do with the prior state law charges of murder and attempted murder now charged as racketeering acts in the instant federal indictment. Since Maltese was not charged with RICO when the tapes were made, and since nothing on the tapes will be offered with respect to the Burke/Venditti shootings, the Garcia tapes are admissible against Maltese in this case and defendant's motion to suppress them is denied.

As to the admissibility of the tapes against all defendants, the tapes will be admissible against all defendants either as co-conspirator declarations under Fed.R. Evid. 801(d)(2)(E) or as statements against penal interest under Fed.R.Evid. 804(b)(3). *United States of America v. Salerno*, 868 F.2d 524, 535 (2d Cir.1989). In any event, our determination of the admissibility of the tapes against all defendants under either rule will await the presentation of the Government's evidence at trial. If that evidence fulfills the conditions of either rule, the tapes will be admitted against all defendants. Therefore, the motion of Maltese's co-defendants to disallow the Garcia tapes as evidence against them is denied without prejudice and with leave to renew at trial.

*Motion to Sever (Gualtiere)*

Defendant Gualtiere moves for severance of his trial from that of his co-defendants pursuant to Fed.R.Crim.Pro. 14, alleging that he will be prejudiced by joinder with those co-defendants. Such motions are "committed to the sound discretion of the trial judge, and a denial of such a motion will be reversed only upon a showing of clear abuse of that discretion." *United States v. Chang An–Lo*, 851 F.2d 547, 556 (2d Cir.1988) (citing cases), *cert. denied*, 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988).

Gualtiere asserts that he will be subjected to prejudicial spillover from proof of additional acts of violence committed by defendants Giovanelli and Maltese, including the loansharking conspiracy (racketeering act # 2) and the murder of Charles Bentivegna (racketeering act # 6). That claim ignores the fact that Gualtiere himself is charged with the murder of Detective Anthony Venditti (racketeering act # 3) and the attempted murder of Detective Kathleen Burke (racketeering act # 4). Moreover, the superseding indictment alleges that Gualtiere was the "main controller" of defendants' alleged gambling operation (*see* superseding indictment ¶ 4(c)) and an integral part of the racketeering enterprise which the Government alleges maintained its "power, territory and financial profits by committing and attempting acts of violence and murder" (*Id.* at ¶ 2(b)), including the Bentivegna homicide and any violent acts connected with the alleged loansharking conspiracy. Thus, given the nature of the crimes with which Gualtiere is charged, any claim of "prejudicial spillover" is meritless. In any event, defendants who are indicted together are normally tried together, and " 'differences in degree of guilt and possible degree of notoriety' of defendants do not require that there be separate trials." *United States v. Nersesian*, 824 F.2d 1294, 1304 (2d Cir. 1987), *cert. denied*, 484 U.S. 957, 108 S.Ct.

355, 98 L.Ed.2d 380 (1987) (citing *United States v. Aloi*, 511 F.2d 585, 598 (2d Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975)).

■ Moreover, since it appears that virtually all of the evidence admitted at a joint trial would also be admissible against Gualtiere if he were tried alone on the RICO and RICO conspiracy charges, the fact that Gualtiere's "role in the conspiracy may have been smaller or less central than that of certain other co-conspirators does not mandate a separate trial." *Id.* And to the extent that some of the evidence will only be admissible against certain defendants individually, this court will instruct the jury at the proper time as to how and against whom they should consider that evidence. We are confident that such admonitory instructions will cure any prejudice to Gualtiere, or any of his co-defendants, that might result from evidence offered against some co-defendants but not others.

■ As to Gualtiere's claim of "antagonistic defenses", it is predicated on the premise that this court will dismiss racketeering acts # 3 and # 4 on the grounds of double jeopardy, full faith and credit and due process. As this court has already denied the motion of all defendants to dismiss those racketeering acts by opinion of April 26, 1989, and order of April 27, 1989, Gulatiere's argument is moot. Moreover, we disagree with Gualtiere that he would be allowed to introduce evidence of his prior state court acquittals as to the Burke/Venditti shootings should the racketeering acts alleging those offenses remain in the indictment. In this Circuit, "a judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted." *United States v. Viserto*, 596 F.2d 531, 537 (2d Cir.1979), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979). Accordingly, we will not permit Gualtiere to elicit evidence of his prior state court acquittals to rebut inferences from the evidence to be admitted at this trial that Gualtiere did in fact participate in the Burke/Venditti shootings. Not only is evidence of a judgment of acquittal hearsay under the Feder-

al Rules of Evidence, *Id.*, we do not believe its probative value would outweigh the dangers of misleading the jury as to their responsibility to judge Gualtiere's guilt or innocence on the evidence presented in this case, despite what other juries before them have concluded about that evidence. *See* Fed.R.Evid. 403.

Defendant's motion for severance is denied.

*Defendants' Motion to Dismiss Counts One and Two*

■ Defendants argue that the Superseding Indictment failed to sufficiently allege the existence of a RICO enterprise, and that this failure mandates dismissal of the RICO counts, counts One and Two.

Count One of the Superseding Indictment charges the defendants with conspiracy to participate in the conduct of the affairs of an enterprise through a pattern of racketeering, in violation of 18 U.S.C. § 1962(d). Count Two of the Superseding Indictment charges defendants with the substantive offense of participation in the conduct of the affairs of the enterprise, in violation of 18 U.S.C. § 1962(c). Defendants contend that the charges set forth in the Superseding Indictment alleging "pattern of racketeering" and "collection of unlawful debt" fail to comport to the requirements needed to make out a "valid RICO 'enterprise'" *Memorandum of Defendant Federico Giovanelli in Support of Omnibus Motion for Pretrial Relief*, at 68 [hereinafter *Giovanelli Memorandum* ] because the "enterprise" was not sufficiently separate and distinct from the "pattern of racketeering" in which it was engaged, as delineated by the Supreme Court in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

The court finds that under *United States v. Turkette, supra*, 452 U.S. at 583, 101 S.Ct. at 2528, while an enterprise is an entity separate and apart from the pattern of racketeering, "proof used to establish these separate elements may in particular cases coalesce....". Thus, contrary to defendants' argument, the fact that the gambling operation "forms the foundation" *Giovanelli Memorandum*, at 69, for the

predicate acts and coalesces with the underlying enterprise does not mean that the dictates established by *Turkette* had been violated. The enterprise as charged alleged an association in fact comprised of defendants Giovanelli, Maltese and Gualtiere who, through a pattern of specific racketeering acts such as, *inter alia,* illegal gambling, loansharking conspiracy, etc., participated in the affairs of the enterprise. The enterprise charged is not the same as the gambling operation, as defendants incorrectly argue. *Giovanelli Reply Memorandum,* at 3. Rather, the gambling operation is only one part of the affairs of the enterprise, even if, as defendants argue, it is the part that had spawned "most, if not all, of the predicate acts." *Id.* The enterprise has an existence distinct and apart from the underlying predicate acts. Proof needed to prove one element may overlap with proof needed to prove the other. *See United States v. Indelicato,* 865 F.2d 1370, 1384 (2d Cir.1989) ("To the extent, therefore, that the relationship between acts necessary to establish a pattern depends on the relationships between individual acts and the enterprise, there will often be some overlap of proof and analysis.").

For the reasons stated above, defendants' motion to dismiss Counts One and Two of the Superseding Indictment is denied.

### Defendants' Motion to Strike Surplusage

■ Defendants argue that references to the "Genovese Family" are unnecessarily imflammatory and should be stricken. Defendants claim that because the "Genovese Family" is not the enterprise that is charged in the instant Superseding Indictment, it is irrelevant to this case and should not be included or used by the Government because its probative value is outweighed by substantial prejudice.

The Government alleged that defendant Giovanelli's role as a soldier in the Genovese Family allowed him to head and operate the charged enterprise. It is not true, as argued by defendants, that there is no nexus whatsoever in the Superseding Indictment between the Genovese Family and the specific RICO enterprise at issue here. The Government is entitled to present proof, if any exists, surrounding the manner in which the charged enterprise is conducted and the purpose for which it is operated. Just because the " 'Genovese Crime Family' is *not* the 'enterprise' alleged in this case" *Giovanelli Reply Memorandum,* at 5 does not mean that the Government's case must be truncated and the Government prohibited from supplying evidence to support allegations it made in the Superseding Indictment, charging that the association-in-fact consisting of these defendants operated a RICO enterprise that in turn was affiliated with and supported by the Genovese Family. While defendants are right that " 'mere association with any 'crime family' or 'crime family members' " could not be used as proof of guilt, that is a different matter that could be addressed in the court's instructions to the jury.

The court cannot say that references to the Genovese Family are irrelevant to the Government's case. "The determinative question in a motion to strike surplusage is not the potential prejudice, but rather the relevance of the allegation to the crime charged in the indictment. If the evidence of the allegation is admissible and relevant to the charge, then despite prejudice, the language will not be stricken." *United States v. Napolitano,* 552 F.Supp. 465, 480 (S.D.N.Y.1982). There is no evidence that the Government included the term "Genovese Family" because it intends to inflame or prejudice the jury against the defendants. The court cannot say that such references to defendants' involvement in organized crime are purely "gratuitous." *See F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1260 (2d Cir.1987). Rather, as stated, such references form part of the Government's theory of the case about the affairs of the charged enterprise, its operations, and its "ongoing association." *United States v. Turkette, supra,* 452 U.S. at 583, 101 S.Ct. at 2528. *See also United States v. Castellano,* 610 F.Supp. 1359, 1428 (S.D.N.Y.1985).

■ The court also cannot agree with defendants' argument that words such as

"racketeer" or "extortionate collections of credit" should be stricken because of their excessive prejudicial impact. Defendants are charged by the Government with violations of, *inter alia*, 18 U.S.C. §§ 1962(c) and (d), the Racketeering Influenced and Corrupt Organizations (RICO) statute and 18 U.S.C. §§ 891 and 892, which is entitled "Making extortionate extensions of credit." There is nothing irrelevant or unduly prejudicial about the use of terms that are lifted directly from the face of the very statutes under which defendants are indicted.

Defendants' motion to strike certain terms because of surplusage is denied.

*Defendants' Motion to Suppress Wiretap Evidence*

Defendants move to suppress all evidence obtained through the electronic surveillance of defendant Giovanelli's telephone on the grounds that the orders lacked probable cause, that the electronic surveillance conducted was unnecessarily intrusive and failed the minimization requirements of Title III, 18 U.S.C. § 2518, and that the *nunc pro tunc* authorization pertaining to surveillance of gambling offenses was invalid because it was too "extensive, confusing, unparticularized, and late...." *Giovanelli Memorandum*, at 91.

On August 26, 1985, upon the application of Leonard Michaels, a Special Attorney with the Department of Justice Organized Crime Strike Force in Brooklyn, New York and the affidavit of Special Agent Lawrence S. Ferreira of the F.B.I., United States District Judge I. Leo Glasser of the Eastern District of New York, issued an order authorizing the interception of specified wire communications of defendant Giovanelli and others named in the application, concerning the enterprise of the Genovese Organized Crime Family as alleged in the Ferreira affidavit. On September 24, 1985, Judge Glasser authorized a thirty-day extension for interceptions of the same targets, and for the same designated offenses of interfering with interstate commerce through extortion, 18 U.S.C. § 1951, extortionate credit transactions, 18 U.S.C. §§ 892–894, racketeering, 18 U.S.C.

§§ 1962 and 1963. On October 24, 1985, Judge Glasser extended his order and authorized interception of wired communication as to a Rocco Mussachia, of conversation related to an added offense of operating an illegal gambling business, 18 U.S.C. § 1955. On November 26, 1985, Judge Glasser authorized extension of interceptions of defendant Giovanelli's phone. On January 3, 1986, Judge Glasser again extended interception for an additional thirty days. After defendant Giovanelli's arrest on January 21, 1986, another order was issued by Judge Glasser granting Leonard Michael's request that authorization for interception be extended an additional week until January 28, 1986.

The court finds and concludes that Judge Glasser's original order for interception and his several subsequent extensions of such order were made following detailed affidavits by Special Attorney Leonard Michael and Special Agent Lawrence Ferreira, upon which Judge Glasser based his findings of probable cause. It is clearly established that the issuing judge's finding, in this case, Judge Glasser's finding, is entitled to substantial deference, *United States v. Martino*, 664 F.2d 860, 867 (2d Cir.1981), *cert. denied*, 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982), *United States v. Shipp*, 578 F.Supp. 980, 985 (S.D. N.Y.1984), *aff'd*, 754 F.2d 1427 (2d Cir. 1985), *cert. denied*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985), and this court will not disturb such findings absent clear evidence to the contrary. As the Second Circuit stated in *United States v. Nersesian*, 824 F.2d 1294, 1306 (2d Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987), " '[o]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " (citation omitted). "A determination of probable cause, which is generally paid great deference by reviewing courts, will be upheld as long as there existed a substantial basis for a ... judge to conclude that a search would uncover evidence of wrongdoing." *Id.* Defendants' motion to suppress the Giovanelli wiretaps for lack of probable cause is therefore denied.

▮ Defendants also claim that because the Government failed to minimize the interception of unauthorized conversations, all wiretap evidence should, on that ground, be suppressed. Defendants themselves admit "the difficulty in proving minimization violations." *Giovanelli Memorandum*, at 92. As the Supreme Court held in *Scott v. United States*, 436 U.S. 128, 140, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978), "[t]he statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." "In determining whether the agents properly minimized it is also important to consider the circumstances of the wiretap. For example, when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." *Id.*

The court cannot say, based on the particular facts of this case, that minimization violations were so unreasonably committed that suppression of all derivative evidence is required. In this case, RICO was listed as a designated offense in the warrants and the enterprise alleged therein was the Genovese Family involving numerous associates and "others yet unknown." Given the complex and potentially extensive reach of the enterprise, more extensive surveillance could have been required in order to determine the precise nature of the enterprise, its scope and the methods of its operation. The court cannot say that defendants have met their burden as to the standard enunciated by the Supreme Court in *Scott*.

As to defendant Giovanelli's third claim concerning the illegality of intercepted conversations related to gambling offenses, the court finds that Judge Glasser, through applications and affidavits submitted to him, was apprised of the nature of all intercepted calls. The third extension order, dated November 26, 1985, was granted upon the application of Leonard Michaels and the affidavit of Lawrence Ferreira, which specifically requested authorization to include the offense of operating an illegal gambling business, 18 U.S.C. § 1955, to the list of designated offenses for the Giovanelli wiretap. Even if that particular order authorized interception of gambling offenses as related only to the Rocco Mussachia telephone, and failed to include defendant Giovanelli's telephone, it cannot be denied that Judge Glasser was made aware, throughout, that gambling conversations were intercepted, as the materials submitted to him specified calls pertaining to gambling. *See United States v. Ardito*, 782 F.2d 358, 362 (2d Cir.1986), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1792, 90 L.Ed.2d 338 (1986) ("authorization under 18 U.S.C. § 2517(5) may be inferred when a judicial officer grants a continuation of the surveillance, even though the offense was not listed in the original order, so long as he was made aware of 'material facts constituting or clearly relating to [the] other offenses' in the application for the continuance." (citation omitted)).

▮ The court also finds and concludes that the *nunc pro tunc* order of October 15, 1986 with respect to the gambling offenses was not "too extensive, confusing, unparticularized or late" as defendant claims. Title 18 U.S.C. § 2517(5) authorizes *nunc pro tunc* orders. Judge Glasser specifically found that the *nunc pro tunc* application was made as soon as practicable. Judge Glasser was obviously in a position to make that necessary finding. The court perceives no reason to set that finding aside under the circumstances of this case.

This was a complicated case which involved extensive investigation by the Government of a large number of individuals alleged to have participated in an extensive and widespread enterprise. Fifteen hundred hours of tape were ultimately developed. Under such circumstances, the court cannot say that the Government failed to notify Judge Glasser of the interception of gambling offenses "as soon as practicable" because the *nunc pro tunc* order came nine months after the last extension order.

Similarly, defendants' attack of the wiretap order issued after defendant Giovanelli's arrest also fails for the reason that Judge Glasser's authorization was made upon a clear finding of probable cause.

Defendants' motion to suppress evidence derived from the interception of wired communications is denied.