UNITED STATES of America, Appellee,

v.

Kaare GILBOE, Jr., Defendant-Appellant.

No. 1106, Docket 81–1481.

United States Court of Appeals, Second Circuit.

Argued May 11, 1982.

Decided July 23, 1982.

Rehearing Denied Aug. 24, 1982.

---

Neal Factor, Long Island City, N. Y., for defendant-appellant.

Michael S. Feldberg, Asst. U. S. Atty., S. D. N. Y., New York City (John S. Martin, Jr., · U. S. Atty., S. D. N. Y., Walter P. Loughlin, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before FEINBERG, Chief Judge, and NEWMAN and WINTER, Circuit Judges.

FEINBERG, Chief Judge:

Defendant Kaare Gilboe, Jr. appeals from a judgment of conviction in the United States District Court for the Southern District of New York, after a jury trial before Judge Richard Owen, on all eight counts of an indictment charging wire fraud in violation of 18 U.S.C. § 1343 and transportation of funds obtained by fraud in violation of 18 U.S.C. § 2314. Defendant was sentenced to a total of 20 years in prison on seven of the eight counts and fined $43,000. On the remaining count, defendant's sentence was suspended with a five-year probationary period to commence upon his release from prison but conditioned upon restitution to the victims of his fraudulent scheme. Defendant is presently incarcerated. His principal arguments on appeal are that the district court had no jurisdiction over the offenses charged and that venue was improper in the Southern District of New York. For the reasons stated below, we affirm the judgment of the district court.

## I. Facts

Defendant's massive fraud on the international shipping industry left victims on the continents of Asia, North America and Europe. The scheme involved several other apparently fraudulent transactions but the charges against defendant in this case stem from two shipments of grain arranged by defendant to the People's Republic of China, one from Argentina and the other from the United States. Although defendant's scheme was complex, we set forth below

only the facts pertinent to the issues before us.

Negotiations for the grain shipment from Argentina began in late 1978 when defendant, a citizen of Norway and resident of Hong Kong, was general manager of a Hong Kong ship brokerage firm. Defendant represented to a corporation owned by the People's Republic of China that he was an agent for shipowners with ships available to transport grain. These ships did not exist. But once defendant secured the contract to transport grain, he obtained ships through negotiations with the Manhattan office of a shipowner, using telex and telephone communication channels, and substituted those ships for the non-existent ones. When the grain was loaded in Argentina in February 1979, the Chinese corporation paid defendant $617,064.49, as required. At about the same time, defendant was supposed to pay the shipowner 90% of the agreed freight due. Instead of doing so, however, defendant caused most of the money he received to be transferred to a bank in the Bahamas using a Manhattan branch of Barclays Bank International. Defendant claimed at trial that a Bahamian company was supposed to pay the shipowner. The victims of defendant's scheme were the shipowner and the People's Republic of China, which subsequently paid $242,117.40 more than the original contract required in order to avoid the shipowner's lien on the grain.

The grain shipments from New Orleans involved the same complicated type of transaction, although defendant used an office in Tokyo and different business connections. This time the scheme netted even greater deposits in the Bahamian bank account, at the expense again of the People's Republic of China as well as three shipowners. In August 1980, a corporation owned by the People's Republic of China paid defendant $1,015,740.67 for one shipment of grain, $968,624.08 for a second and $944,999.19 for a third. At defendant's direction, this money was forwarded from the Bank of China, Peking, to the Bank of Tokyo in New York, to the Manhattan office of the Royal Bank & Trust Company, to the Republic National Bank in Manhattan, to the Channel Islands, back to New York at the Chase Manhattan Bank and finally to Chase Manhattan Bank in Nassau, Bahamas. Defendant again claimed that a Bahamian company was supposed to pay the shipowners.

Defendant admitted involvement in the transactions but asserted that he was acting at the direction of others and was merely an innocent victim. At sentencing, the district judge found defendant's testimony "a tissue of perjury."

## II. Discussion

Appellant argues that the district court did not have jurisdiction over the offenses charged because he was a nonresident alien whose acts occurred outside the United States and had no detrimental effect within the United States. In connection with the Argentina and New Orleans transactions, defendant was charged with both wire fraud under 18 U.S.C. § 1343 and transportation of funds obtained by fraud under 18 U.S.C. § 2314.

▆▆▆ Turning first to the former charges, defendant was convicted on four counts of wire fraud under § 1343, reproduced in the margin.[1] Defendant admitted that, in negotiating with the Manhattan shipowner for the shipment from Argentina, he had telephone and telex conversations with a ship broker in Bayshore, Long Island and that he caused other telex and telephone negotiations to occur between Manhattan and Hong Kong. These negotiations were to obtain ships to transport the

---

1. 18 U.S.C. § 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined· not more than $1,000 or imprisoned not more than five years, or both.

grain, a key element of the fraud. The evidence was clearly sufficient to sustain jurisdiction on this offense, which forms the basis for count one. *United States v. Hasenstab*, 575 F.2d 1035, 1039–40 (2d Cir.), cert. denied, 439 U.S. 827, 99 S.Ct. 100, 58 L.Ed.2d 120 (1978). With respect to the shipments from New Orleans, defendant also admitted that he caused the payments received from the Chinese corporation to be electronically transferred through Manhattan banks to accounts in the Bahamas, the basis for counts three, four and five. This evidence was sufficient to justify asserting jurisdiction over defendant. As we found in *United States v. Sindona*, 636 F.2d 792, 802 (2d Cir. 1980), cert. denied, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981), jurisdiction under § 1343 is satisfied by defendant's use of the wires to obtain the proceeds of his fraudulent scheme.

■ With respect to the conviction on counts charging violations of § 2314, reproduced in the margin,[2] defendant's jurisdictional argument depends on his premise that the section applies only to the transportation of tangible items and does not cover "electronic crediting and debiting," the means by which the funds in defendant's scheme moved from one bank to another. However, if such transfers of money are covered by § 2314, defendant's attack on jurisdiction fails because the evidence clearly showed that defendant had aided and abetted the transportation in foreign commerce through banks in Manhattan of "securities or money . . . taken by fraud." The question whether the section covers electronic transfers of funds appears to be one of first impression, but we do not regard it as a difficult one. Electronic signals in this context are the means by which funds are transported. The beginning of

the transaction is money in one account and the ending is money in another. The manner in which the funds were moved does not affect the ability to obtain tangible paper dollars or a bank check from the receiving account. Indeed, we suspect that actual dollars rarely move between banks, particularly in international transactions. If anything, the means of transfer here were essential to the success of the fraudulent scheme. Defendant depended heavily on his ability to move funds rapidly out of reach of disgruntled shipowners who were to receive payment within days of loading the grain. And it was not until the funds, through a series of bank transfers, came to rest in the Bahamas that defendant's scheme was complete. See *United States v. Sindona*, 636 F.2d at 802. The record amply shows that the direct transfers of precise amounts received through fraud were in a manner clearly indicating that the fraud and transfer were a single transaction. The primary element of this offense, transportation, "does not require proof that any specific means of transporting were used." *Pereira v. United States*, 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1953). Therefore, since fraudulently obtained funds were transported within the meaning of the section and banks in Manhattan were utilized, there was sufficient evidence to support jurisdiction under § 2314.[3]

We turn next to appellant's argument that venue was improper in the Southern District of New York. Preliminarily, there is a real question whether defendant adequately raised the issue below; if he did not, the argument is waived. *United States v. Price*, 447 F.2d 23, 27 (2d Cir.), cert. denied, 404 U.S. 912, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971). Defendant contends that he objected to venue in his motion for judgment of acquittal at the close of the

2. 18 U.S.C. § 2314 provides, in pertinent part:
   Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud. . . .
   Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

3. The government argues that defendant transported "money" or, in the alternative, that he transported "securities." The court charged the jury that the transfers of funds fell "within one or more of the categories of securities or moneys." Since defense counsel stated explicitly that he had "no exceptions to the charge," we do not decide whether the transfers here were of one or the other or of both.

government's case, but the government disputes this. The record indicates that defense counsel focused on jurisdiction rather than on venue in making his motion.

However, even if we accept the dubious assumption that defendant properly challenged venue at trial, the argument is without merit. Appellant claims that under 18 U.S.C. § 3238, reproduced in the margin,[4] venue would be proper only in the district in which defendant was arrested, the District of Connecticut. But defendant relies on the wrong section; § 3238 applies only to offenses "not committed in any district," as its title indicates. But that is not the situation here. The appropriate section to apply in this case is 18 U.S.C. § 3237(a), which provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

> Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves.

As already indicated, there were numerous telexes and telephone calls between New York and Hong Kong and other parts of the world. Also, the proceeds of the fraud were all transferred through New York so that "such commerce" moved "from, through, or into" the Southern District of New York. Therefore, venue was proper in that district under the section quoted above.

We have carefully considered the other arguments defendant raises and find them without merit.

The judgment is affirmed.

**4.** 18 U.S.C. § 3238 provides:

> Offenses not committed in any district
> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.