UNITED STATES of America, Appellee,

v.

Rafael RAMIREZ–AMAYA,
Defendant-Appellant.

No. 776, Docket 86–1447.

United States Court of Appeals,
Second Circuit.

Argued Feb. 10, 1987.

Decided March 2, 1987.

Lawrence Mark Stern, New York City (Martin L. Schmulker, New York City, on brief), for defendant-appellant.

David E. Brodsky, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., Bruce A. Green, Asst. U.S. Atty., New York City, on brief), for appellee.

Before LUMBARD, KEARSE, and MINER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Rafael Ramirez-Amaya ("Ramirez") appeals from a judgment entered in the United States District Court for the Southern District of New York, following a jury trial before John M. Cannella, Judge, convicting him on one count of importing 510 kilograms of cocaine into the United States, in violation of 21 U.S.C. §§ 812, 952, and 960 (1982); one count of attempting to possess cocaine with the intent of distributing it, in violation of 21 U.S.C. §§ 812, 841, and 846 (1982); and two counts of conspiring to commit those acts, in violation of 21 U.S.C. §§ 963, 846 (1982). He was sentenced to concurrent terms of 20 years' imprisonment on each count, to be followed by a lifetime special parole term, fined $250,000 on each count, for a total fine of $1,000,000, and assessed the costs of prosecution. On appeal, Ramirez challenges venue, evidentiary rulings, and his sentence. Finding no merit in any of his contentions, we affirm the judgment of conviction.

## I. BACKGROUND

Briefly, the evidence at trial, taken in the light most favorable to the government, established that one Tomas De Los Rios entered into negotiations with an undercover agent of the Federal Bureau of Investigation ("FBI") to conduct a multimillion dollar money laundering scheme for Colombian cocaine traffickers. During these negotiations, De Los Rios also indicated that his associates were seeking to smuggle large quantities of cocaine into the United States. In January 1986, De Los Rios discussed the possibility of importing cocaine with Ramirez, who had recently been involved in an unsuccessful attempt to import 167 kilograms of cocaine into the United States from Costa Rica.

Several weeks later, Ramirez informed De Los Rios that an unidentified Colombian drug dealer had offered to pay $1 million to have 500 kilograms of cocaine flown from Colombia to the United States, and De Los Rios went to Bogota, Colombia, to discuss this proposition with Ramirez. The coconspirators agreed to ship the cocaine to the United States on an airplane to be supplied by the FBI agent. The plane was to be flown from Colombia, with a refueling stop in the Caribbean Islands, to Westchester County Airport in New York; the cocaine would then be loaded by the agent into three rental cars to be parked at various locations in New York City. The agent would deliver the car keys to De Los Rios, who would deliver the cocaine to his Colombian associates and receive in return the $1 million transportation fee.

In March 1986, after these details were agreed upon, 510 kilograms of cocaine were loaded into an airplane in Colombia. This plane was flown, by pilots hired by the United States Drug Enforcement Administration for this investigation, to Tampa, Florida, where the cocaine was transferred to an FBI plane which was flown to LaGuardia Airport in New York. From LaGuardia, the cocaine was transported to FBI offices in Manhattan and secured.

On the following day, Ramirez, De Los Rios, and others flew to New York where they had several meetings to make the final arrangements for the exchange of money and cocaine. They were arrested and the present indictment and trial followed. Ramirez was convicted and sentenced as indicated above.

## II. DISCUSSION

On appeal, Ramirez makes a number of challenges to his conviction on the grounds that venue was improper, that certain of the trial court's evidentiary rulings were erroneous, and that the court erred in not limiting the total of his fines to $500,000

and in failing to consider appropriate factors in imposing sentence. We find all of Ramirez's arguments to be without merit; only the venue and aggregation-of-fines contentions warrant discussion.

## A. *Venue*

We reject Ramirez's contention that venue was improperly laid in the Southern District on the conspiracy to import and importation counts. Venue is proper in any district in which any part of the crime was committed. *See* 18 U.S.C. § 3237(a) (1982 & Supp. III 1985); *United States v. Potamitis,* 739 F.2d 784, 791 (2d Cir.1984), *cert. denied,* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1985); *United States v. Panebianco,* 543 F.2d 447, 455 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977). Thus, as to a charge of importation, venue may properly be laid "in any district from, through, or into which ... such imported object ... moves." 18 U.S.C. § 3237(a); *see United States v. Sandini,* 803 F.2d 123, 128 (3d Cir.1986); *United States v. Netz,* 758 F.2d 1308, 1312 (8th Cir.1985) (per curiam). As to a charge of conspiracy, venue may properly be laid in the district in which the conspiratorial agreement was formed or in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators. *See United States v. Moeckly,* 769 F.2d 453, 460–61 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986).

The evidence was sufficient to show that venue in the present case was properly laid in the Southern District as to both the conspiracy to import and importation counts. The coconspirators met in Manhattan, which is within the Southern District, in order to make final arrangements for the collection of the cocaine after its transport to New York. These meetings were overt acts in furtherance of the conspiracy to import and hence supported the laying of venue in the Southern District for that count of the indictment.

Ramirez contends that venue as to the importation count was improper because the cocaine was flown to LaGuardia Airport, which is located in the Eastern District of New York, not the Southern. The evidence was, however, that the course of the flight carried the airplane over the Narrows, a body of water that lies within the joint jurisdiction of the Southern and Eastern Districts of New York, *see* 28 U.S.C. § 112(b). This was sufficient to make venue in the Southern District proper. *See United States v. Williams,* 536 F.2d 810, 812 (9th Cir.) (coconspirator's flight over the Southern District of California, while en route to obtain marijuana, was sufficient to support venue there), *cert. denied,* 429 U.S. 839, 97 S.Ct. 110, 50 L.Ed.2d 106 (1976). While we would be loath to uphold venue on the basis of the flight path of an aircraft manned solely by government agents if there were an indication that its route had been significantly out of the ordinary, considering its point of departure and its destination, there is no such indication here. Rather, the proof was that the plane followed a normal route to LaGuardia airport. And though we recognize that LaGuardia was not the destination intended by the coconspirators, they can hardly complain on this basis, for the airport to which they directed the cocaine, Westchester County Airport, is within Southern District of New York.

## B. *The Aggregation of Fines*

Ramirez contends that, since $250,-000 was the maximum he could be fined on any one of the offenses of which he was convicted, the maximum total fine that the court could properly impose on him was $500,000 rather than $1,000,000. He relies on 18 U.S.C. § 3623(c)(2), which provides, in pertinent part that

> the aggregate of fines that a court may impose on a defendant at the same time for different offenses that arise from a common scheme or plan, and that do not cause separable or distinguishable kinds of harm or damage, is twice the amount imposable for the most serious offense.

18 U.S.C. § 3623(c)(2) (Supp. III 1985) (repealed effective Nov. 1, 1987, Pub.L. 98–473, tit. II, §§ 212(a)(2), 235(a)(1), 98 Stat. 1987, 2031 (1984), as amended by Pub.L.

99–217, § 4, 99 Stat. 1728 (1985)). His reliance is misplaced.

The different interests protected by prohibitions against importation and against possession with intent to distribute are obvious. The latter is aimed principally against the distribution of narcotics; the former implicates as well the United States' interests in the integrity of its borders. Further, conspiracies have traditionally been viewed as offenses that cause kinds of harm that are distinguishable from the harm caused by the underlying substantive offenses. *See Callanan v. United States,* 364 U.S. 587, 593–94, 81 S.Ct. 321, 325, 5 L.Ed2d 312 (1961) (collective criminal agreement is a greater potential threat to the public than the individual delicts because, *inter alia,* it makes possible the attainment of more complex aims and "makes more likely the commission of crimes unrelated to the original purpose for which the group was formed"); *United States v. Rabinowich,* 238 U.S. 78, 88, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915) (conspiracy is an "essentially different" offense because, *inter alia,* "[i]t involves deliberate plotting to subvert the laws, educating and preparing the conspirators for further and habitual criminal practices").

There is no legislative history indicating that, in enacting § 3623(c)(2), Congress held other than these traditional views. Rather, the legislative history of the identically-worded section that is to replace § 3623(c)(2) upon the latter's repeal, *see* 18 U.S.C. § 3572(b) (added, effective Nov. 1, 1987, by Pub.L. 98–473, tit. II, §§ 212(a)(2), 235(a)(1), 98 Stat.1987, 2031, as amended), indicates that the limitation was designed principally to prevent an accumulation of fines for numerous "minor" offenses arising out of a pattern of conduct violating administrative regulations. Thus, the report of the Senate Committee on the Judiciary stated that the section was included "in response to concerns that there might be some offenses, particularly regulatory offenses, where an ongoing pattern of conduct constitute[s] numerous minor offenses." S.Rep. No. 225, 98th Cong., 2d Sess. 108–09, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3291–92.

None of the offenses of which Ramirez was convicted was "minor"; and since each caused a distinguishable kind of harm, the court was entitled to aggregate the fines on each count without limitation.

## C. *Other Contentions*

■ We find no merit in Ramirez's contention that the trial court erred in admitting the evidence that Ramirez had previously attempted to import a large quantity of cocaine into the United States. Ramirez's defense to the present charges against him was that, although he was a business associate of De Los Rios, he had had no intention of involving himself in unlawful activities. Proof that Ramirez had previously sought to engage in precisely such activities was admissible on the issue of his intent. *See* Fed.R.Evid. 404(b) ("Evidence of other crimes, wrongs, or acts .... may ... be admissible ... as proof of ... intent...."); *see United States v. Martino,* 759 F.2d 998, 1004 (2d Cir.1985). The court carefully balanced the probative value of the evidence against the likely prejudice to Ramirez from admitting it, *see* Fed.R.Evid. 403, and gave a limiting instruction to the jury. We find no abuse of discretion in the decision to admit the evidence.

■ Nor do we find any error in the court's sentencing of Ramirez. Contrary to Ramirez's view, the record does not indicate that the court ignored the rehabilitation factor. Rather, the court explicitly mentioned rehabilitation and stated that the potential was low and that he would "concentrate on" the deterrence factor. The record indicates that the court gave Ramirez appropriate individual consideration in imposing sentence.

We have considered all of Ramirez's other arguments on appeal and have found them to be without merit.

## CONCLUSION

The judgment of conviction is in all respects affirmed.