UNITED STATES of America,

v.

Kreso P. BEZMALINOVIC, Defendant.

No. S4 96 Cr. 97 (MGC).

United States District Court,
S.D. New York.

April 30, 1997.

Mary Jo White, United States Attorney for Southern District of New York by Peter B. Sobol, Brian D. Coad, Assistant United States Attorneys, New York City, for U.S.

Marc Bogatin, New York City, for Defendant.

## OPINION

CEDARBAUM, District Judge.

Kreso P. Bezmalinovic is charged in an eight-count superseding indictment with conspiracy (Count One), major fraud against the government (Counts Two and Three), bank fraud (Count Four), mail fraud (Counts Five and Six) and obstruction of justice (Counts Seven and Eight). Bezmalinovic has moved

to dismiss Count Four for improper venue. For the reasons discussed below, Bezmalinovic's motion is granted.

## The Bank Fraud Charge

Count Four of the indictment charges Bezmalinovic with bank fraud in violation of 18 U.S.C. § 1344 and § 2. Specifically, the indictment alleges that "in the Southern District of New York and elsewhere," Bezmalinovic "unlawfully, wilfully, and knowingly did execute and attempt to execute a scheme and artifice to defraud Manufacturers Hanover Trust Company, 100 Duffy Avenue Hicksville, New York ("MHT"), a financial institution, and to obtain moneys owned by and under the custody and control of MHT by means of false and fraudulent pretenses and representations." According to the indictment, this scheme involved obtaining a mortgage from MHT by means of a false mortgage application.

It is undisputed that Bezmalinovic did not commit any acts in furtherance of the scheme in the Southern District of New York. Bezmalinovic allegedly prepared the false application in the Eastern District of New York, submitted the application to MHT in the Eastern District of New York, received the proceeds in the form of checks drawn on an MHT mortgage closing account located in the Eastern District of New York and deposited those checks in his personal checking account in the Eastern District of New York. Shortly thereafter, Bezmalinovic allegedly transferred the money to the account of a company he owned, P.C. & J. Contracting Co., Inc. ("PC & J"). Both PC & J and PC & J's bank account were located in the Eastern District of New York.

According to the government, venue is proper in the Southern District of New York because of three contacts between Bezmalinovic's scheme and this district. First, shortly after Bezmalinovic deposited the checks representing the proceeds of the loan into his checking account at Chemical Bank in the Eastern District of New York, that branch sent the checks to Chemical's processing center in Manhattan. There, each check was credited to Bezmalinovic's account, subject to collection, and was forwarded to the New York Clearing House in Manhattan. Second, the checks were sent by the New York Clearing House to MHT's processing center in Manhattan. It was there that they were "collected," that is, debited from the MHT mortgage closing account. Third, both MHT and Chemical have their headquarters in Manhattan.

## Discussion

■ Questions of venue in criminal cases are of constitutional dimension. *See United States v. Johnson*, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944); *Travis v. United States*, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961). The Sixth Amendment guarantees trial "by an impartial jury of the State and district wherein the crime shall have been committed...." U.S. Const. amend. VI; *United States v. Reed*, 773 F.2d 477 (2d Cir.1985) (discussing constitutional dimension of venue). If Congress does not explicitly indicate the location in which it considers a crime to occur, "the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946). However, "where the acts constituting the crime and the nature of the crime charged implicate more than one location," venue may be constitutionally permissible in more than one district. *United States v. Reed*, 773 F.2d 477, 480 (2d Cir.1985). In this case, the government argues that venue is proper in both the Eastern District of New York and the Southern District of New York.

The government also argues that 18 U.S.C. § 3237(a) applies because bank fraud is a "continuing offense" that can occur in more than one district over a period of time. The portion of § 3237(a) relied on by the government provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a). As the Eighth Circuit held in *United States v. Washington*, 109 F.3d 459, 466 (8th Cir.1997), a "scheme to defraud" within the meaning of § 1344 "is, at least in most cases, a series of acts designed to obtain money or property fraudulently, not simply ... one specific act...." As such, a violation of § 1344 appears to be a continuing offense within the meaning of § 3237(a). *See id.* Defendant does not dispute the applicability of § 3237(a). Moreover, the Second Circuit has recently noted in a different context that bank fraud is a continuing offense. *United States v. Duncan*, 42 F.3d 97, 104 (2d Cir.1994) ("[C]ontinuing offenses such as conspiracy and bank fraud do not run afoul of the *Ex Post Facto* Clause if the criminal offenses continue after the relevant statute becomes effective."). But the question remains whether in this particular case, the offense was "begun, continued, or completed" in the Southern District of New York.

■ Both the government and the defendant agree that the appropriate test to apply in determining whether venue is constitutionally permissible in this district is the "substantial contacts" test set forth by the Second Circuit in *United States v. Reed*, 773 F.2d 477 (2d Cir.1985). The ultimate question of whether venue is proper in any particular case depends on the nature of the crime charged and the location of the acts that constitute the crime. In *Reed*, the court addressed the proper approach to considering that ultimate question. It stated that "there is no single defined policy or mechanical test to determine constitutional venue." *Id.* at 481. Instead, it held that the inquiry is "best described as a substantial contacts rule that takes into account a number of factors—the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact-finding...." *Id.*

■ In this case it is undisputed that the site of defendant's acts was the Eastern District of New York. The only acts alleged to have occurred in the Southern District of New York are the ministerial actions taken by MHT and Chemical Bank in the process of crediting defendant's account. It is not alleged that those acts were intended or foreseen by defendant. Thus, the first *Reed* factor does not support venue in this district. But the government urges that the other *Reed* factors, particularly the elements and nature of the crime and the locus of the effect of defendant's criminal conduct, support venue in the Southern District of New York.

The federal statute defendant is charged with violating, 18 U.S.C. § 1344, provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Defendant correctly notes that 18 U.S.C. § 1344 is violated whenever a person devises and executes or attempts to execute a scheme to defraud a financial institution, regardless of whether that person ever obtains money or property from the financial institution. *See, e.g., United States v. Stavroulakis*, 952 F.2d 686, 694 (2d Cir.1992), *cert. denied*, 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992). Therefore, the crime charged in Count Four of the indictment was complete before any acts occurred in the Southern District of New York. But the fact that a crime was complete at one point in time does not necessarily mean that the crime did not continue thereafter. *See United States v. Candella*, 487 F.2d 1223, 1227–28 (2d Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974). The government argues that the successful execution of defendant's scheme was inextricably bound to the Southern District of New York because the actual obtaining of MHT's funds occurred at Chemical's check processing center in Manhattan and was rendered final at MHT's check processing center in Manhattan. The government emphasizes that without MHT's and Chemical's acts in the Southern District of New York, Bezmalinovic

would not have obtained any money and therefore would not have attained the goal of his fraudulent scheme.

The government is correct that the acts taken in the Southern District of New York were necessary in a "but-for" sense to the ultimate success of defendant's scheme. Although the check from MHT was given to defendant in the Eastern District and deposited by Bezmalinovic in the Eastern District, the funds were not cleared until certain ministerial acts occurred in the Southern District. But defendant did not intend those acts to take place in the Southern District, nor could he have foreseen that the acts would occur there. The crediting and debiting that occurred in Manhattan were purely ministerial acts that did not involve any decision-making; the decision to grant defendant a mortgage had already been made by MHT in the Eastern District.

The Eighth Circuit recently considered an argument by the government that when a bank in one district was defrauded under § 1344, venue was proper in the district in which the bank had its main office. The government's theory was that the fifty-eight branches of the bank operated as "sub-offices of the main institution" and that therefore the fraud's effect was felt in the district in which the main office was located. The court stated:

> In this age of interstate banking, we suspect that the government's theory would expand bank fraud venue far beyond what is reasonable or sufficiently sensitive to Sixth Amendment concerns, yet the government carefully avoids discussing the full ramifications of its venue theory.

*United States v. Washington,* 109 F.3d 459, 466 (8th Cir.1997) (finding venue proper based on specific contacts with district). That statement applies equally well here. Under the government's theory, venue for bank fraud would be expanded vastly. It would have no relation to the acts committed by a defendant, to the foreseeable results of those acts, or to the actual effect of those acts, but only to the inner workings of large financial institutions. This broad interpretation of *Reed* and of § 3237 is not supported

by case law and is of real concern given the constitutional basis of venue.

No case cited by the parties addresses the precise issue of whether a bank's ministerial acts of debiting and crediting accounts can themselves be sufficient to support venue. The government instead points to cases it argues are analogous. The cases cited by the government are all distinguishable, however, either because the final decision by the entity that was the object of the fraud was made in the district in which venue was held to be proper, or because the acts which occurred in that district were either intended by the defendant or foreseeable to him.

The government relies first on two cases involving false statements. In *United States v. Candella,* 487 F.2d 1223 (2d Cir.1973), the defendants were charged with making false statements in violation of 18 U.S.C. § 1001. The false statements were in affidavits and bills of lading that were prepared, executed and handed to New York City officials in the Eastern District of New York. The government argued that because the documents were "simply accepted at the City's branch offices in Brooklyn for the convenience of parties ... and were then conveyed to the central office in Manhattan for examination and payment," venue was proper in the Southern District of New York. *Id.* at 1227. It appears that it was in Manhattan that the decision to make payment was made by the City and was approved and finalized by the Department of Housing and Urban Development. *Id.* The Second Circuit held that venue was proper in the Southern District of New York because venue is properly laid in "the whole area through which force propelled by an offender operates." *Id.* at 1228 (citing *United States v. Johnson,* 323 U.S. 273, 275, 65 S.Ct. 249, 250, 89 L.Ed. 236 (1944)). The court found that "[t]he force propelled here by the defendants immediately contemplated Manhattan." *Id.* Apparently this was because "[t]he false statements ... were intended to produce funds. The statements continued to be false and continued to be within the jurisdiction of the United States not only when initially presented but also upon arrival in Manhattan, where the decision was reached to make the funds available." *Id.*

It is not clear from the court's decision in *Candella* whether the defendants knew that the documents containing false statements would be forwarded to Manhattan for a decision. The defendants may well have been aware that city officials accepted the documents in Brooklyn merely for the convenience of parties. But in any event, it is clear that the acts that occurred in Manhattan were not purely ministerial. The decision by the entity that was the object of the fraudulent scheme was made in Manhattan.

The Ninth Circuit addressed similar facts in *United States v. Angotti*, 105 F.3d 539 (1997), a false statement case involving a violation of 18 U.S.C. § 1014. That section punishes anyone who "knowingly makes any false statement ... for the purpose of influencing ... the action" of a federally insured institution. In *Angotti*, unlike *Candella*, it is clear from the court's decision that the defendant was not aware that the false statements he made in a loan application in the Northern District of California would ultimately be sent to the bank's head office in the Central District of California for a final decision. The Ninth Circuit nevertheless held that venue was proper in the Central District of California. It explained:

> [The defendant] was charged with making false statements for the purpose of influencing the actions of bank officials, who in this case were located in the Central District of California. The statements were actually communicated to those officials; indeed the officials acted upon the statements and approved [the defendant's] loan. We conclude that venue was therefore proper in the Central District, where the communication reached the audience whom it was intended to influence....

*Id.* at 542. In response to the defendant's argument that he did not know where the information would ultimately be sent, the court stated that "[the defendant's] statement was made for the purpose of influencing the bank official who had the power to approve his loan. It is irrelevant whether [the defendant] subjectively knew the identity or location of that official." *Id.* at 543. Accordingly, the court held that the defendant's "act of 'making' the false statements

continued until the statements were received by the person whom they were ultimately intended to influence." *Id.*

The heavy emphasis by the *Angotti* court on the location of final decision-making is in accordance with the *Candella* decision. Such emphasis is understandable given the nature of the crimes charged. In each case, the defendant intended to influence an entity by making false statements. In each case, the district in which the entity would be influenced, if at all, was the district in which the final decision was made. The receipt of the false statements by the final decision-maker was inextricably bound to the crime charged. But in this case, the object of the fraud, that is, the entity that was intended to be influenced, was located in the Eastern District of New York. The final decision to grant Bezmalinovic's application for a mortgage was made in the Eastern District. The effects of the fraud were felt in the Eastern District. Only ministerial acts took place in the Southern District.

The government also relies on *United States v. Gilboe*, 684 F.2d 235 (2d Cir.1982), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983). The defendant in *Gilboe* was charged with wire fraud in violation of 18 U.S.C. § 1343 and transportation of funds obtained by fraud in violation of 18 U.S.C. § 2314. In the course of executing his fraudulent scheme, the defendant had engaged in negotiations with a Manhattan office using telex and telephone communications. He had also caused the fraudulently obtained money to be transferred to a bank in the Bahamas through a bank in Manhattan. The Second Circuit held that venue was proper in the Southern District of New York. In its analysis, the court first quoted 18 U.S.C. § 3237(a) as then in effect, including that part of § 3237(a) that stated:

> "Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

The court then explained:

> [T]here were numerous telexes and telephone calls between New York and Hong

Kong and other parts of the world. Also, the proceeds of the fraud were all transferred through New York so that "such commerce" moved "from, through, or into" the Southern District of New York. Therefore, venue was proper in that district under the section quoted above.

*Id.* at 239.

The circumstances in *Gilboe* differ from those in this case in several ways. First, the court in *Gilboe* did not base its holding solely on the transfer of funds through Manhattan, but noted the existence of telephone and telex contacts. Second, the court relied on the language in § 3237 relating specifically to offenses "involving ... transportation in interstate or foreign commerce." For such offenses, the statute explicitly provides that venue is proper in any district through which such commerce moves.[1] But the count at issue here does not involve interstate or foreign transportation. Finally, it appears from the decision in *Gilboe* that the defendant in that case took an active role in directing that funds be transferred through Manhattan. He not only knew that the money would pass through the Southern District of New York, but intended that it do so.

*United States v. Tannenbaum*, 934 F.2d 8 (2d Cir.1991), cited by the government, is also distinguishable from this case. The defendant in *Tannenbaum* was convicted of conspiracy to avoid currency reporting requirements in the Eastern District of New York. He had opened two checking accounts in Brooklyn in furtherance of his scheme. He then exchanged checks drawn on those accounts for cash. All of the exchanges took place in Manhattan. The court held that the overt acts of causing checks to be issued on the two Brooklyn accounts were sufficient to support venue in the Eastern District of New York. It stated that "[a]lthough the checks were written in Manhattan, the actual debiting of the accounts—which was not only foreseeable but, indeed, necessary to the success of the scheme—occurred at [the defendant's]

bank in Brooklyn." *Id.* at 12–13. The emphasis on foreseeability distinguishes *Tannenbaum* from this case.

The government argues, however, that foreseeability is not necessary for proper venue. In support of that position, the government points to *United States v. Ramirez–Amaya*, 812 F.2d 813 (2d Cir.1987). In that case, the defendant was convicted in the Southern District of New York of importing cocaine into the United States. The defendant and his coconspirators had agreed to ship cocaine from Colombia to Westchester County Airport, which is in the Southern District of New York. However, the FBI agents who were investigating the scheme caused the cocaine to be transferred to an FBI plane in Florida and then flown to La-Guardia Airport, which is in the Eastern District of New York. The defendant argued on appeal that venue in the Southern District was improper because the cocaine was flown to the Eastern District.

The court first held, citing § 3237, that "as to a charge of importation, venue may properly be laid 'in any district from, through, or into which ... such imported object ... moves.'" *Id.* at 816. It then stated that evidence that "the course of the flight carried the airplane over the Narrows, a body of water that lies within the joint jurisdiction of the Southern and Eastern Districts of New York ... was sufficient to make venue in the Southern District proper." *Id.* The government argues that these facts are analogous to those in the present case, because the flight path of the plane in *Ramirez–Amaya* was beyond the knowledge or control of the defendant. The analogy is unpersuasive, however, because *Ramirez–Amaya* involved transportation in foreign commerce, for which § 3237 specifically provides that venue is proper in any district through which such commerce moves.

But the government's argument is unpersuasive for a second reason as well. The

---

1. The issue of venue based on the transfer of funds arose in a similar context in *United States v. Goldberg*, 830 F.2d 459 (3d Cir.1987). In that case, the defendant was also charged with violating 18 U.S.C. § 1343 and § 2314. The Third Circuit noted that § 3237 applied, and then stated that "[i]t is clear from the record ... that the wire transfer of funds from New York to Wilmington passed through the Federal Reserve Bank in Philadelphia. Consequently, there is no doubt under § 3237 that venue was proper...." *Id.* at 465.

reasoning behind the *Ramirez–Amaya* court's decision actually emphasizes the importance of foreseeability or control by the defendant over acts in the district in which he is tried. After holding that venue was proper in the Southern District, the Second Circuit stated:

> While we would be loath to uphold venue on the basis of the flight path of an aircraft manned solely by government agents if there were an indication that its route had been significantly out of the ordinary, considering its point of departure and its destination, there is no such indication here. Rather, the proof was that the plane followed a normal route to LaGuardia airport. And though we recognize that LaGuardia was not the destination intended by the coconspirators, they can hardly complain on this basis, for the airport to which they directed the cocaine, Westchester County Airport, is within the Southern District of New York.

*Id.* This explanation demonstrates that the Second Circuit considered foreseeability and intent of the defendants to be important factors in the determination of whether venue was constitutionally permissible. Indeed, the Second Circuit stated that it would be "loath to uphold venue" solely on the basis of an insignificant contact with this district that was not intended by the defendants or foreseeable to them. The government argues that MHT's and Chemical's acts in Manhattan were part of those institutions' "normal route" for transferring money, just as the airplane's "normal route" took it over the Narrows. Even if true, that is irrelevant. The "normal route" of an airplane between two locations is important because a defendant can foresee that the plane will pass over districts along that route. There is no similar foreseeability in the present case.

None of the cases discussed above is directly on point. The cases provide some guidance, but do not resolve the issue of whether venue is proper in the Southern District of New York in this case. Each case cited by the government is distinguishable on its facts. The fact that each case can be distinguished is a reflection of the fact that the determination of whether venue is constitutionally permissible in a given case necessarily requires an examination of both the specific facts of that case and the nature of the particular crime charged. As the Second Circuit has stated, "there is no single defined policy or mechanical test to determine constitutional venue." *United States v. Reed,* 773 F.2d 477, 481 (2d Cir.1985). Thus, while foreseeability by the defendant was seen as important by the *Tannenbaum* and *Ramirez–Amaya* courts, it was not seen as necessary in the false statement cases. In those cases, the fact that the target of the fraudulent scheme made its final decision relating to the fraud in a particular district was held to be a close enough connection to the crime charged for venue to be proper in that district. In this case, the connection to the Southern District of New York is much more tenuous than in any of the cases discussed above. Defendant did not intend and could not have foreseen that any acts would occur in the Southern District, and no decisions were made by the target of the fraud in the Southern District. The only acts that occurred in this district were ministerial in nature.

The ultimate question for this court to decide is whether the crime charged has "substantial contacts" to the Southern District of New York within the meaning of *Reed.* Only if sufficient contacts exist is venue constitutionally permissible. In this case, the requisite substantial contacts do not exist.

### Conclusion

For the foregoing reasons, defendant's motion to dismiss Count Four for improper venue is granted.

SO ORDERED.